IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| PAUL AND DOROTHY ENGLER, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 04-04164-CV-C-NKL |
| ) | |
| EVERETT SENTER, ) | |
| SUCCESSOR TRUSTEE OF THE ) | |
| ABC TRUST, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER

Pending before the Court is Plaintiffs Paul and Dorothy Engler's ("the Englers") Motion for Summary Judgment [Doc. # 75], and Defendant Everett Senter's ("Senter") Motion for Summary Judgment [Doc. # 80]. For the reasons set forth below, both Motions will be granted in part and denied in part.

**I.  Background**

On April 21, 2002, the Englers signed a "Contract for Sale of Real Estate" to purchase a piece of land in Camden County, Missouri, from the ABC Trust for $70,000, including $1,000 earnest money paid at the time of contracting. This contract provided, among other things, that the Englers would acquire conventional financing for 80 percent of the purchase price at a fixed 8 percent interest rate, amortized over 30 years.

1

When the Englers were unable to obtain the necessary financing, the parties executed an "Amendment to Contract for Sale of Real Estate." The amendment transformed the original contract for sale into a contract for deed, a type of installment land contract (hereinafter, "the amended April contract"). Under the amended April contract, the Englers would make a $14,000 down payment and take possession of the land on July 3, 2002. However, they would not obtain legal title, i.e., the deed would not be released from escrow, until they had paid the balance of the purchase price in the form of a balloon payment "on or before" one year later, July 3, 2003. In the intervening months, the Englers would make eleven monthly principal and interest payments of $372.57, starting August 3, 2002. The amended April contract also recited the previous $1,000 earnest money payment, moved the original closing date of June 1 to July 3, 2002, and obligated the Englers to pay an additional $400 in consideration for moving the closing date. It is not clear from the amendment how the earnest money was to figure in the calculus of the balloon payment, though presumably it reduced the amount to be financed at closing from $56,000 to $55,000.

At closing on July 3, 2003, Senter and the Englers purportedly executed a new "LONG TERM LAND CONTRACT"[1] (hereinafter, "the July contract") for the same piece of Camden County real estate. The July agreement modified the amended April contract in several ways, including a new cancellation and forfeiture clause. Under this added provision, Senter could cancel the entire contract if the Englers defaulted, and they

---

[1] The July contract is not a standard form contract and appears to have been drafted specifically for the transaction. Neither party remembers who prepared the July contract.

2

would forfeit all payments made up to the point of the cancellation. The July agreement recites the same down payment, monthly installment, and balloon payment terms as the amended April contract; however, there is no mention of the $1,000 earnest money that the Englers had already paid.[2] Nor is any reference made to the $400 the Englers were supposed to pay for the delay in closing.[3] The July contract recites the "principal balance" to be financed as $56,000.

After the closing, the Englers began to make monthly payments. They generally rounded up their payments from $372.57 to $375.00; however, the November payment was for only $275.00. While the Englers maintain that they mailed checks to Senter for all eleven monthly payments, the records before the Court show only eight payments. The checks purporting to cover the October, December, and March payments were actually paid to other parties in unrelated transactions. (See table below.) Although all the payments were due on the third day of each month, at least two of the checks were mailed much later. The check for the August payment was dated August 1, 2002, but was mailed to Senter in a letter dated August 8 and postmarked from Nebraska on August 16. Senter's Hawaii bank records show the check was deposited on August 21. The payment due April 3, 2003, was sent in a letter dated April 27. The following chart lists the

---

[2]This appears to have been a mutual mistake as both parties forgot about the $1,000 earnest money until the check was produced by the escrow company in February 2006.

[3]There is some discrepancy in the briefing as to whether this $400 was paid. Initially, Senter claimed never to have received it, but the Englers produced a cancelled check deposited into a Texas bank account under Senter's name. Through discovery, the Englers obtained a copy of a deposit slip for Senter's Hawaii bank account, indicating that the check was routed to his Texas account instead.

3

checks the Englers claim to have sent, what the checks were allegedly for, the actual payees designated on the copies of the checks produced to the Court, and whether the payment was late or missed altogether:

| **Payment due** | **Date due** | **Check #** | **Payee** | **Amount** | **Check date** | **Missed / late** |
|---|---|---|---|---|---|---|
| Earnest Money | 4/21/2002 | 2001 | Legend Land Title | $1,000.00 | 4/21/2002 | -- |
| Closing Delay | 7/3/2002 | 2130 | Senter | $400.00 | 6/29/2002 | -- |
| Down Payment | 7/3/2002 | ? | Senter | $14,000.00 | 6/29/2002 | -- |
| Aug. Payment | 8/3/2002 | 1785 | Senter | $378.00 | 8/1/2002 | > 15 days late |
| Sept. Payment | 9/3/2002 | 1838 | Senter | $375.00 | 9/1/2002 | -- |
| Oct. Payment | 10/3/2002 | 1852 | Harrah's | $13.90 | 9/24/2002 | missed |
| Nov. Payment | 11/3/2002 | 1790 | Senter | $275.00 | 11/1/2002 | -- |
| Dec. Payment | 12/3/2002 | 1799 | HyVee | $9.84 | 9/12002 | missed |
| Jan. Payment | 1/3/2003 | 1596 | Senter | $375.00 | 12/20/2002 | -- |
| Feb. Payment | 2/3/2003 | 1899 | Senter | $375.00 | 1/25/2003 | -- |
| Mar. Payment | 3/3/2003 | 2264 | Big Fred's | $20.13 | 8/9/2002 | missed |
| Apr. Payment | 4/3/2003 | 2350 | Senter | $375.00 | 4/3/2003 | > 25 days late |
| May Payment | 5/3/2003 | 2491 | Senter | $375.00 | 4/27/2003 | -- |
| June Payment | 6/3/2003 | 2532 | Senter | $375.00 | 5/26/2003 | -- |
| Balloon | 7/3/2003 | Cashier's | Legend Land Title | $56,088.00 | 7/15/2203 | > 12 days late |

Senter sent the Englers a certified letter on February 25, 2003, advising them that their payments were late and warning that he would cancel the agreement if they continued to make late payments. It is unclear whether the late payments mentioned referred to the August late payment or the missing October and December payments. He sent another letter on March 25, 2003, noting that the Englers had not responded to his

4

"last letter, which you received and signed for on March 17th." It is unclear whether the "last letter" was the February 25th letter, given the lag time between when it was sent and when the Englers signed for the "last letter." Additionally, the March 25 letter references the removal of furnishings as though the "last letter" had demanded as much. In any event, the March 25th letter gave the Englers until March 31st to sign a month to month lease, possibly with an option to purchase, or the property would be rented to someone else. Senter sent a final letter on May 3, 2003, stating that he had not received payments from the Englers for the months of October or December, that they were in default, that he was canceling the contract, and that they had forfeited all payments made to date. On July 15, 2003, twelve days after the balloon payment would have been due under the contract, the Englers tendered a cashier's check for $56,088 to Legend Land Title, the escrow company. Senter refused to release the deed and the Englers refused to abandon the premises.

A year later, the Englers sued Senter for specific performance, joining U.S. Bank and Legend Land Title as co-defendants. Senter counterclaimed for ejectment and damages. After both the Englers and Senter filed for summary judgment, the Court dismissed Defendants U.S. Bank and Legend Land Title upon the Englers' Motion. The next day, Legend Land Title faxed all the relevant documents it had to the Englers' counsel, including records of the long forgotten $1,000 earnest money payment, the $400 closing delay payment, and the amended April contract. Although the Englers had already moved for summary judgment on their claim for specific performance of the July

5

contract, these newly discovered documents prompted a change in course. For the first time in their Suggestions in Opposition to Senter's Summary Judgment Motion, the Englers argue that the amended April contract should govern the outcome of the case, and that the July contract is not supported by consideration. They have not, however, amended their Complaint to seek relief under the amended April contract.

## II. Which Contract Controls

In oral argument before the Court on April 3, 2006, the Englers conceded that if the cancellation and forfeiture clause of the July contract were supported by additional consideration, the July contract would control over the April contract and the cancellation provision would be enforceable. Both parties agreed that the Court should determine which contract controlled. To that end, the Court ordered additional briefing on the consideration issue.

In his Supplemental Suggestions in Support of Summary Judgment, Senter argues that there are three provisions in the July contract–either benefits to the Englers or detriments to Senter–that were absent from the April contract, any of which would be sufficient consideration to support the forfeiture clause. First, the July contract granted the Englers a right of prepayment without penalty; second, the July contact granted the Englers a right to make improvements on the property before title transferred; and third, the July contract required Senter to pay all state, county, and municipal taxes and assessments except the 2002 county real estate taxes. In addition, Senter also argues that his reliance on the Englers' promises under the July contract constitutes consideration.

6

And if all these arguments fail, Senter contends that the Englers should be estopped from denying the validity of the July contract since they filed suit to specifically enforce it.

### A. Right of Prepayment

Paragraph 12 of the July contract provides, "Buyer shall have the right of prepayment without penalty of the balance due under this Agreement at any time." There is no equivalent provision in the April contract, but line 7 of the June amendment does provide that "Deeds will be held in escrow . . . until balloon is paid on or before 1 year." The Court concludes that this "on or before" language in the amended April contract created the same right of prepayment added more explicitly to the July contract. As such, paragraph 12 of the July contract did not create any right not already enjoyed by the Englers and cannot be additional consideration for the forfeiture clause.

Since the early nineteenth century, most jurisdictions have denied mortgagors a right to prepay a mortgage debt absent an express contract provision to the contrary. *Skyles v. Burge*, 789 S.W.2d 116, 118-19 (Mo. Ct. App. 1990). To even the playing field between mortgagors and mortgagees, Missouri has created a limited statutory right for mortgagors to prepay "any promissory note or other evidence of debt secured by residential real estate when the full principal balance thereof is paid after five years from the origination date and prior to maturity." Mo. Rev. Stat. § 408.036. However, the prepayment statute does not grant the Englers the same prepayment right they would have enjoyed under the July contract because the July contract provided for prepayment "at any time" while the statute applies only to early payment of the balance "after five years

7

from the origination date."[4]  Nevertheless, the Englers could still have enjoyed a right of prepayment under the April contract if the "on or before" language therein was sufficient to create such a right under Missouri law.

The Court knows of no Missouri case law addressing this precise question; however, several other jurisdictions have held that express contract language allowing for payment "on or before" a certain date does create a right of prepayment. *See Bayside Gardens Apt. Ventures v. Sec. Sav. Bank*, 1996 Wash. App. LEXIS 1150, 6-7 (Wash. Ct. App. 1996) ("when a note is payable 'on or before' the date of maturity, the debtor may pay the principal and accrued interest at any time before maturity, and thereby relieve itself of the obligation to pay unearned interest"); *Latimer v. Grundy County Nat'l Bank*, 239 Ill. App. 3d 1000, 1003 (Ill. App. Ct. 1993) ("there is an express prepayment right in an installment contract which contains the language 'if not sooner paid.' This language reserves to the purchaser an option or right to accelerate payment."); *Edlund v. Bounds*, 842 S.W.2d 719, 726 (Tex. App. 1992) ("words 'on or before' on promissory notes are well understood to mean, 'immediately at or at any time in advance of' a period named."); *Kuttner v. May Realty Co.*, 220 Ga. 163, 164 (Ga. 1964) ("Where a contract provides for the payment of notes 'on or before maturity' this court has held that the maker would

---

[4]The statute applies to "any promissory note or other evidence of debt secured by residential real estate." Mo. Rev. Stat. § 408.036. The instrument at issue in the present case was a contract for deed, or installment land contract, and not a mortgage. It is not clear whether Missouri law would treat a contract for deed as "other evidence of debt secured by residential real estate" so as to trigger the prepayment right created in § 408.036. But the Court need not resolve this issue since, as discussed above, the statute would not apply to the present facts even if the instrument were a mortgage rather than a contract for deed.

8

necessarily have the right to pay the principal plus accrued interest at any time before maturity and thereby be relieved from paying unearned interest."); *but see Kruse v. Planer*, 288 N.W.2d 12, 14 (Minn. 1979) ("the phrase 'if not sooner paid' does not authorize prepayment").[5]

The Court predicts that Missouri would follow the majority of other jurisdictions in holding that a contract provision requiring payment "on or before" a specified date creates a right of prepayment in the debtor. The April contract conferred just such a right on the Englers in the instant case. Under both contracts, the purchase price was $70,000 to be paid by a $14,000 down payment, twelve monthly installments of $372.50, and a final balloon payment of $56,000. The deeds to the property were to be held in escrow "until balloon is paid on or before 1 year." Since the balloon payment and the down payment totaled the contract price, and the balloon payment had to be made "on or before 1 year," the Court concludes that the contract allowed the Englers to obviate any remaining monthly installments by paying the full balloon payment at any time within one year.

The Court is also not persuaded that the right to prepayment "without penalty" contained in the July contract is distinct consideration from the right to prepayment the Court has inferred from the "on or before" language in the April contract. There is no

---

[5]The reasoning employed in *Kruse*–that the phrase "if not sooner paid" did not create a right of prepayment but only a right to bargain for a modification of the contract later–has been criticized as "wrongly decided" and "peculiar and strained." See *Latimer v. Grundy County Nat'l Bank*, 239 Ill. App. 3d 1000, 1002 (Ill. App. Ct. 1993) ("Certainly the parties [in *Kruse*] could subsequently modify the contract to allow prepayment without having to rely on contract language purportedly included only to allow that possibility.")

9

indication that the "on or before" language somehow incorporated a penalty for prepayment in the form of the remaining monthly installments. Such a reading of the contract language would not make sense because under the April contract the Englers had the right to receive the deed when they paid the balloon, which was $56,000. Once the deed is released, there would be no further security for the payment of additional monthly installments. In addition, full payment of the purchase price would have been made at that time. Given these circumstances, the better reading of the April contract is that the Englers would satisfy their debt in full as soon as the $56,000 balloon was paid.

Because the Englers had a full right to prepayment under the April contract, the July contract's provision granting them the same right cannot be additional consideration for the forfeiture clause.

### B. Right to Make Improvements

The July contract provides that "Buyer may make structural improvements to the property only with Seller's prior approval." July contract ¶ 5. The April contract is silent as to improvements, most likely because that instrument was originally a contract for sale contemplating only a short time between contract formation and full payment of the purchase price. But even in the context of a contract for deed, there is no reason to believe the Englers could not have made structural improvements so long as they had Senter's permission. Indeed, with Senter's permission, the Engler's could have made improvements to the land without signing a contract of any kind. This provision does not

10

empower the Englers to do anything they couldn't have done otherwise. It cannot be consideration for the forfeiture clause.

### C. Taxes

The amended April contract split responsibility for all taxes between the parties. Under this instrument, Senter was obligated to pay: (1) special taxes, special subdivision, homeowners association and/or condominium assessments, levied before closing, and (2) a share of general taxes to be prorated at the time of closing based on a 30 day month, including the closing day itself. Similarly, the Englers were obligated to pay: (1) special taxes, special subdivision, homeowners association and/or condominium assessments, levied after closing, and (2) a share of general taxes to be prorated at the time of closing based on a 30 day month. April contract ¶ 11. By contrast, the July contract provided:

> The Seller shall pay in full all State, County and Municipal taxes and assessments, general and special, which are a lien on said property at the time of execution of this Agreement. The 2002 real estate taxes shall be pro-rated at the time of the closing of this Agreement. All other real estate taxes shall be the responsibility of Buyer and the Buyer agrees to pay the 2002 County Real Estate Taxes.

July contract ¶ 4.C.

The Court concludes that the July contract's tax provisions placed no greater obligation on Senter than the amended April contract did. The earlier instrument divvied up all taxes at the time of closing. Special taxes were to be paid according to when they were assessed: those assessed before closing, i.e. those already due and owing, were to be paid by Senter, and those assessed after closing were to be paid by the Englers. All general taxes, whether state, county or municipal, were to be pro-rated and shared by both

11

parties at closing, assuming a 30 day month, with the closing day itself to be counted in Senter's share.

The July contract is very similar in effect. It required Senter to pay all taxes and assessments, general and special, that were a lien on the property, i.e., those that were already due and owing at the time of closing. Senter bore this same obligation under the language of the amended April contract. Under the July contract, he also owed a pro-rated share of all 2002 real estate taxes except those assessed by the county, which were the sole responsibility of the Englers. This provision created a lesser obligation on Senter than he had under the amended April contract because his prorated share of the 2002 taxes no longer included those assessed by the county. Essentially, the April and July contracts' tax provisions, though different in form, are identical in substance except for the 2002 county real estate taxes which the July contract shifted entirely onto the Englers. There is no additional benefit to the Englers nor any additional burden on Senter to be found in these provisions, and thus no additional consideration for the forfeiture clause.

### D. Detrimental Reliance and Promissory Estoppel

Senters' final argument for enforcing the July contract is no more persuasive than the previous three. Under Missouri law, a promisee's change of position in reliance on the promise of another can be sufficient consideration to support a contract between the promisee and the promisor. *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 10 (Mo. Ct. App. 2002). Stated another way, "[a] promise which the promisor should reasonably

12

expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Res (2nd) of Contracts § 90. If such detrimental reliance occurred in the present case, there is no evidence of it before the Court.

Nowhere in his briefing does Senter point to any promises unique to the July contract on which he relied to his detriment. Even assuming, without any evidence, that he suffered some detriment by relying on the Englers' promise to make a $14,000 down payment, eleven monthly payments of $372.57, and a final balloon payment, these promises had already been made in the amended April contract, and any reliance on them would not constitute consideration for the July contact. Only reliance on a promise the Englers made for the first time in the July contract would serve as consideration for that instrument. As mentioned earlier, the Englers did make an additional promise in the July contract to pay all the 2002 county real estate taxes. They also granted Senter a remedy of cancellation and forfeiture in the event of their default. But there is no evidence before the Court that Senter made any change of position in reliance on these provisions, let alone a change that was detrimental to him. For example, had he sold the property to another buyer immediately after the Englers defaulted in reliance on his right to cancel the contract, perhaps that might have been detrimental reliance sufficient to serve as consideration. Or if he had ignored a bill from the county tax assessor in reliance on the Englers' promise to pay the county real estate taxes, that too might have qualified as

13

detrimental reliance. But in fact, Senter did not rely on the Englers' promise to the pay the taxes as he paid them himself. Thus, there is nothing to suggest that Senter relied to his detriment on any July-contract-specific promise made by the Englers so as to constitute consideration.

Based upon the evidence and arguments presented by the parties, the Court concludes that the July contract was not supported by additional consideration beyond that to which Senter had already obligated himself under the amended April contract. As such, the July contract, including its cancellation and forfeiture provision, is unenforceable.

## III.   Cross Motions for Summary Judgment

The Englers move for summary judgment on their Complaint for specific performance, to quiet title, and for declaratory judgment[6] on the July contract, as well as on Senter's Counterclaim for ejectment and damages, also under the July contract. Senter moves for summary judgment on both the Englers' Complaint and his Counterclaim under the July contract. Neither party has amended their Complaint or Counterclaim to seek relief in the alternative under the amended April contract. Thus, the only rights and obligations presently at issue in this suit are those created by the July contract. As the Court has found the July contract unenforceable for lack of consideration, neither the Englers nor Senter are entitled to any relief under that instrument. Consequently, both

---

[6]The Englers raised an additional count for tortious interference with a business expectancy in the Complaint but subsequently abandoned that claim at oral argument on the summary judgment motions.

parties' motions for summary judgment must be denied as to their own claims and granted as to their opponents' claims.

Accordingly, it is hereby

ORDERED that the Englers' Motion for Summary Judgment [Doc. # 75] is GRANTED in part and DENIED in part. The Motion is GRANTED as to Senter's Counterclaim but DENIED as to the Englers' Complaint. It is further

ORDERED that Senters' Motion for Summary Judgment [Doc. # 80] is GRANTED in part and DENIED in part. The Motion is GRANTED as to the Englers' Complaint but DENIED as to Senters' Counterclaim.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: May 23, 2006
Jefferson City, Missouri